# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FIRST FINANCIAL INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SCOTCH 80's LIMITED, INC.; JOHNNY THOMAS WILLIAMS; and NEVADA WEST BUSINESS INSURANCE AGENCY, INC.,<br><br>　　　　Defendants.<br>_____<br>SCOTCH 80's LIMITED, INC.; and JOHNNY THOMAS WILLIAMS,<br><br>　　　　Crossclaimants,<br><br>vs.<br><br>NEVADA WEST BUSINESS INSURANCE AGENCY, INC.,<br><br>　　　　Crossdefendant.<br>_____ | Case No.: 2:08-cv-00862-RLH-LRL<br><br>**O R D E R**<br><br>(Motion for Partial Summary Judgment–#26; Motion to Stay–#29) |

　　　　Before the Court is Plaintiff First Financial Insurance Company's **Motion for Partial Summary Judgment** (#26), filed March 6, 2009.  The Court has also considered

1

AO 72
(Rev. 8/82)

1  Defendants Scotch 80's Limited, Inc., Johnny Thomas Williams, and Nevada West Business
2  Insurance Agency. Inc.'s Oppositions (##30, 31), filed March 24, 2009; and Plaintiff's Reply
3  (#32), filed April 7, 2009.
4  Also before the Court is Defendants' **Motion to Stay** (#29), filed March 24, 2009;
5  Plaintiff's Opposition (#33), filed April 8, 2009; and Defendants' Reply (#36), filed April 20,
6  2009.

### BACKGROUND

8  Defendant Scotch 80's Limited owns and operates Squiggy's Bar in Las Vegas,
9  Nevada. On February 25, 2006, Defendant Johnny Thomas Williams, a Squiggy's employee, was
10 working at the bar. During Williams's shift, a man walked into the bar, brandished a gun, and
11 robbed the cash register. The exact details regarding how the robber took the money are not
12 entirely clear. One witness testifies she saw Williams and the robber "struggling" at the cash
13 register. (Dkt. #26, Mot. Ex. E.) Another witness says the robber took the money from the
14 register himself, and another witness testifies that Williams gave the money to the robber. (Dkt.
15 #26, Mot. Ex. C–D.) Regardless of how the robber obtained the money, it undisputed that as he
16 was preparing to leave, Williams yelled loudly that the bar was being robbed, grabbed a baseball
17 bat, and hit the robber with it.
18 After being hit with the bat, the robber made his way out of the back of the bar. As
19 he was leaving, he encountered Ramon Sandoval, a patron at the bar, who had run over to stop the
20 robber from escaping. The men engaged in an altercation in which Sandoval was eventually shot
21 in the neck. One witness testifies that after Williams hit the robber with the baseball bat,
22 "[Sandoval] chased the robber down." (Dkt. #26, Mot. Ex. D.) This same witness states that the
23 men "sort of collided at the door together, . . . [Sandoval] sort of grabbed [the robber, . . . and after
24 Sandoval] caught him at the door, that's when the gun went off." (*Id.*) Another witness testifies
25 that as the two men met at the door, she "heard a scuffle," and then "heard a gunshot go off."
26 (Dkt. #26, Mot. Ex. E.) Based on the depositions provided by the parties, none of the witnesses to

AO 72
(Rev. 8/82)

this incident saw clearly whether the robber intentionally shot Sandoval or whether the gun went off accidentally. After Sandoval was shot, the robber escaped and has not been found.

At the time of this incident, First Financial insured Scotch 80's under an insurance policy issued through Nevada West Business Insurance Agency. The insurance policy states that First Financial would "pay those sums that [Scotch 80's] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (Dkt. #26, Mot. Ex. A.) The insurance agreement contains an important exclusion, which provides that First Financial is not required to provide coverage for bodily injuries "arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." (*Id.*)

On August 2, 2007, Sandoval filed suit in Nevada state court ("*Sandoval* action") against Scotch 80's and Williams for negligence; negligent hiring, training, supervision, and retention; and negligent infliction of emotional distress. On July 7, 2008, First Financial filed suit in this Court and named Scotch 80's, Johnny Williams, and Nevada West as Defendants. In this lawsuit, First Financial seeks (1) a declaration that it is under no duty to defend or indemnify its insureds based on the *Sandoval* action and (2) reimbursement for funds used to defend its insureds thus far. On March 6, 2009, First Financial filed its Motion for Partial Summary Judgment, asking this Court to declare that is has no duty to defend its insureds in the *Sandoval* action. For the reasons discussed below, this Motion is granted.

## DISCUSSION

### I.     Duty to Defend

Under Nevada law, an insurer has a duty to defend its insured whenever there is potential for coverage. *Bidart v. Am. Title*, 734 P.2d 732, 734 (Nev. 1987). In other words, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Nev. 1966)). "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the

1  insured." *Id.* (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir.
2  1988)). However, "the duty to defend is not absolute. A potential for coverage only exists when
3  there is arguable or possible coverage. Determining whether an insurer owes a duty to defend is
4  achieved by comparing the allegations of the complaint with the terms of the policy." *Id*.

5  **II.     Assault and Battery**

6  First Financial argues it has no duty to defend its insureds in the *Sandoval* action
7  because Sandoval's personal injuries arose from numerous assaults and batteries that occurred
8  during the commission of the robbery. The Court agrees with Plaintiff. Because Sandoval's injury
9  arose out of at least one assault or battery, there is no potential for coverage under Scotch 80's
10 insurance agreement.

11 First, the robber committed an assault when he robbed the cash register at gunpoint.
12 An assault occurs when a defendant (1) intends to cause harmful or offensive contact, or the
13 imminent apprehension of such contact; and, as a result, (2) the plaintiff is put in imminent
14 apprehension of such contact. *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998)
15 (citing Restatement (Second) of Torts § 21); *see also Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269
16 (D. Nev. 2001) (citing Restatement (Second) of Torts § 21). There is no doubt that the robber used
17 a gun to rob Squiggy's Bar. Defendants also do not dispute that Williams was aware that the
18 robber had a gun when he demanded money from the cash register. Two eyewitnesses saw
19 Williams either giving the money to the robber or struggling with him at the cash register. By
20 robbing the bar at gunpoint, the robber intended to cause the imminent apprehension of harmful
21 contact, and Williams was put in immediate apprehension of such contact. The armed robbery was
22 therefore an assault.

23 But the robbery was not the only assault or battery that ultimately led to Sandoval's
24 injury. Williams committed a battery when he struck the robber with the baseball bat, and this act
25 was part of the chain reaction that led to Sandoval's injury. To establish a battery claim, a plaintiff
26 must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact

did occur. *Burns,* 175 F. Supp. at 1269 (citing Restatement (Second) of Torts § 21). The facts indicate that Williams hit the robber as he was fleeing and that Williams did not act in self-defense. Nonetheless, even if Williams did act to protect himself, self-defense is simply a defense to battery; it does not nullify the battery. *See Garcia v. United States*, 826 F.2d 806, 810–11 (9th Cir. 1987). More important, as a result of Williams' decision to shout loudly that a robbery had occurred and to hit the robber with the baseball bat, the robber attempted to leave the bar quickly and Sandoval ran to intercept the robber at the door. Thus, Williams' battery on the robber, even if justified, led to Sandoval eventually being shot in the neck.

Finally, a battery occurred when Sandoval and the robber engaged in a scuffle as the robber was fleeing the premises. Defendants correctly point out that it is unclear whether the robber intentionally shot Sandoval or whether the gun accidentally discharged. The Court nonetheless finds that a battery occurred during this altercation and that it led to Sandoval's injury. If the robber intentionally shot Sandoval, this act was clearly a battery. But even if the gun accidentally discharged, a battery occurred prior to the shooting that precludes insurance coverage in this case. Two witness testify, and Defendants do not contest, that Sandoval and the robber had an altercation right before the shooting. One witness claims Sandoval grabbed the robber when they "collided together at the door" and another says they got into a "scuffle." (Dkt. #26, Mot. Ex. D–E.) Either way, one or both of the men intentionally touched the other in a harmful or offensive way, which eventually led to Sandoval's injury. The Court therefore finds that a battery occurred when the two men met at the door.

**III.   Arising out of an Assault or Battery**

As noted above, First Financial is not required to provide insurance coverage for bodily injuries "arising out of assault or battery." (Dkt. #26, Mot. Ex. A.) Based on this contractual provision, the Court finds First Financial has no duty to defend its insureds in the *Sandoval* action because a series of assaults and batteries led to Sandoval being shot in the neck. First, the robber committed assault when he robbed the cash register at gunpoint and demanded

5

money from Williams.  As a result of this assault, Williams struck the robber with a bat causing the robber to flee and Sandoval to run toward the robber to prevent him from escaping.  Finally, Sandoval and the robber got into a scuffle in which one or both parties battered the other, which led to Sandoval's gunshot wound.  Thus, Sandoval's bodily injury arose from a number of assaults and batteries—from the armed robbery, to the baseball bat, to the confrontation at the door.  Put in other words, but for these assaults and batteries, Sandoval would not have been injured.  *See Capitol Indemnity Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1087 (D. Nev. 1999) (In determining whether a claim arises out of an assault or battery, the "crucial inquiry is . . . whether the cause of action would not exist 'but for' [the] assault [or battery]".).  For this reason, there is no potential for coverage under the policy and First Financial is not obligated to defend its insureds.

The Court notes that this exclusion applies to all of the claims in the *Sandoval* action.  The Nevada Supreme Court has held that a policy with virtually identical language excluding coverage for claims arising out of an assault or battery extended not only to an assault and battery claim, but also to a claim for negligent hiring, training or supervision.  *Hernandez v. First Financial Ins. Co.*, 802 P.2d 1278, 1279–80 (Nev. 1990).  Furthermore, this is the clear majority view.  *See Allstate Ins. Co. v. Bruttig,* 2006 WL 3248393, *5 (D. Nev. 2006) ("It appears that all courts that have evaluated . . . assault and battery exclusionary policies have construed them to bar appended negligence claims that arose out of the underlying assault and battery."); *Graves v. CMC, Inc.,* 882 A.2d 761 (Del. 2005) ("other jurisdictions have held that language barring coverage for claims based on . . . an assault and battery . . . include actions for negligence in causing or failing to prevent the assault and battery."); *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 345 (Mo. Ct. App. 2000) (no insurance coverage exists for negligence claims when the policy excludes claims arising from assault and battery).  Because all of Sandoval's claims are based on negligence, First Financial has no duty to defend its insureds against any of the claims in the *Sandoval* action.  The Court therefore grants First Financial's Motion for Partial Summary Judgment.

### IV.     Motion to Stay

On the same day they filed their Opposition to First Financial's Motion for Partial Summary Judgment, Defendants filed a Motion to Stay, asking this Court to stay judgment until the *Sandoval* action is resolved in the state court. Defendants argue in their Motion to Stay, as they do in their Opposition, that important facts need to be determined before it can be ascertained whether First Financial in fact has a duty to defend. The Court is not persuaded by this argument. First Financial's duty to defend exists independent of the outcome of the *Sandoval* case. Whether or not Scotch 80's or Williams's negligence led to Sandoval's injuries does not change the fact that the injuries arose out of multiple assaults and batteries. Defendants' Motion to Stay is denied.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (#26) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Stay (#29) is DENIED.

Dated: June 29, 2009.

_____
ROGER L. HUNT
Chief United States District Judge