# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FIRST FINANCIAL INSURANCE COMPANY, ) | Case No.: 2:08-cv-00862-RLH-LRL |
| Plaintiff, ) | **O R D E R** |
| vs. ) | (Motion for Summary Judgment–#62) |
| SCOTCH 80'S LIMITED, INC., JOHNNY THOMAS WILLIAMS, and NEVADA WEST BUSINESS INSURANCE AGENCY, ) | |
| Defendants. ) | |
| SCOTCH 80'S LIMITED, INC., and JOHNNY THOMAS WILLIAMS, ) | |
| Crossclaimants, ) | |
| vs. ) | |
| NEVADA WEST BUSINESS INSURANCE AGENCY, ) | |
| Crossdefendant. ) | |

Before the Court is Defendant and Crossdefendant Nevada West Business Insurance Agency's ("Nevada West") **Motion for Summary Judgment** (#62), filed May 28, 2010.  The Court has also considered Crossclaimants Scotch 80's Limited, Inc. and Johnny Thomas Williams' Opposition ( collectively "Scotch 80's") (#65), filed July 7, 2010, and Nevada West's Reply (#66), filed July 19, 2010.

AO 72
(Rev. 8/82)

**BACKGROUND**

Crossclaimant Scotch 80's Limited owns and operates Squiggy's Bar in Las Vegas, Nevada.  At the time these incidents took place, Scotch 80's Limited was owned by Danny R. Piper and Joseph Bunch.  On February 25, 2006, a man walked into the bar, brandished a gun, and robbed the cash register.  As the robber prepared to leave the bar, an employee, Johnny Thomas Williams, grabbed a baseball bat and hit the robber with it.  After being hit with the bat, the robber encountered Ramon Sandoval, a patron at the bar.  The men engaged in an altercation in which Sandoval was eventually shot in the neck.  The robber then escaped and has not been found.  At the time of this incident, First Financial Insurance Company ("FFIC") insured Scotch 80's under an insurance policy issued through Nevada West Business Insurance Agency.  On August 2, 2007, Sandoval filed suit in Nevada state court ("Sandoval action") against the Scotch 80's and its employee.  Scotch 80's tendered its defense for the Sandoval action to FFIC; however, the insurer initially denied a duty to defend.  (Dkt. #52, Decl. of Thomas Holden, Ex. B, FFIC letter, May 29, 2008.)  Nevertheless, FFIC later agreed to defend Scotch 80's under a full reservation of rights. (Dkt. #51, Decl. of William C. Morison, Ex. A, Morison letter, June 30, 2008.)  Specifically, FFIC expressly reserved the right to "seek reimbursement from [Scotch 80's] for any defense fees, costs or expenses or indemnification payments FFIC might make on [Scotch 80's] behalf" if it was later determined that FFIC had no duty to defend. (*Id.*)

On July 7, 2008, FFIC filed suit in this Court naming Scotch 80's and Nevada West as Defendants.  In this lawsuit, FFIC sought a declaration that it was under no duty to defend or indemnify Scotch 80's in the Sandoval action.  The Court granted FFIC's summary judgment to that effect. (Dkt. #43, Order, June 29, 2009.)  During this litigation, Scotch 80's filed a crossclaim against Nevada West (Dkt. #8, Answer and Crossclaim, Sept. 29, 2009), alleging that Nevada West breached duties it owed Scotch 80's in failing to obtain appropriate insurance coverage. Nevada West has moved for summary judgment on these claims.  For the reasons discussed below, the Court grants Nevada West's Motion for Summary Judgment.

2

**DISCUSSION**

I.     **Legal Standard**

      The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

      The moving party bears the burden of showing that there are no genuine issues of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

1   *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

2   show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285

3   F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

4   **II.      Insurance Dispute**

5              Nevada West did not breach any duty owed to Scotch 80's.  A federal court, sitting

6   in diversity, must construe insurance policies as the applicable state would if presented the same

7   question.  *Fortis Beneifits Ins. Co. v. Johnson*, 966 F. Supp. 987, 989–90 (D. Nev. 1997).  In

8   Nevada, an insurance agent or broker is generally an agent of the insured, not the insurer, and

9   therefore owes certain fiduciary-like duties to the insured.  *The Grand Hotel Gift Shop v. Granite*

10  *State Ins. Co.*, 108 Nev. 811, 816–17 (Nev. 1992).  Here, Nevada West acknowledges that under

11  the law it was an agent for Scotch 80's, not the insurance company, and so the factual background

12  is immaterial.

13             However, an insurance agent's duty only requires him to procure the insurance

14  specifically requested by the insured, not to advise the insured to obtain more coverage than

15  requested or describe the insurance obtained to them.  *Ray v. Valley Forge Ins. Co.*, 92 Cal.Rptr.2d

16  473, 479 (Cal. Ct. App. 1999); *see also* 1-2 Appleman on Insurance § 2.05(3)(a) ("An

17  intermediary's duty of reasonable care includes a duty to procure the coverage specifically

18  requested by a client.").    Here, Scotch 80's has not shown any evidence that it requested anything

19  other than a Commercial General Liability policy.  Further, Scotch 80's could not have even hinted

20  at requesting specific coverage under their policy for assault and battery because the then

21  principles admitted to never considering assault and battery coverage.  (#62, Mot. Ex. G, Piper

22  Dep. 64).  Since Scotch 80's did not request this coverage, Nevada West had no duty to provide it.

23             Further, Scotch 80's, through its principals, is deemed to have constructive notice

24  that it did not have assault and battery coverage.  According to Nevada law, an insured has a duty

25  to read their insurance policy.  *Farmers Ins. Exch. v. Young*, 108 Nev. 328, 333 n.2 (Nev. 1992).

26  Therefore courts "must assume that the insured party has at least read the policy and given a plain

AO 72
(Rev. 8/82)

1   common-sense meaning to the policy's provisions." *Id.*  Here, Mr. Piper, one of the principles at

2   the time, stated that he did not read the "fine print" and Mr. Bunch, the other principle, said he

3   only glanced over the policy.  (#62, Mot. Ex. G, Piper Dep, 99–100; Ex. H, Bunch Depo. 42,

4   98–101).  The exclusion, however, was quite clear and not in fine print.  In fact, the exclusion

5   appeared separately in the table of exclusions in a plain and simple manner.  (*Id.*, Ex. B, Ins.

6   Policy).  Further, it was the only exclusion on its specific page and appeared in large, bolded font,

7   in essence, jumping off the page.  (*Id.*)  Any person who read the policy would have known that

8   assault and battery was excluded from the policy.  Mr. Bunch admits as much in his deposition

9   after being shown the policy.  When shown the policy, Mr. Bunch stated: "After reading it, I would

10  assume that we were not covered." (*Id.* Ex. H, Bunch Depo. 101).  Therefore, Scotch 80's should

11  have known that it did not have assault and battery coverage and if it desired such coverage it

12  should have specifically requested it after seeing the policy.

13         Finally, Scotch 80's contends that better coverage was available and should have

14  been obtained by Nevada West.  While this may theoretically be true, Scotch 80's provides no

15  evidence whatsoever of this mere contention.  Whereas Scotch 80's provides no evidence, Nevada

16  West produced expert affidavits that such coverage was impossible to obtain for a video poker bar

17  that didn't serve food in a dangerous area of town.  Since litigants must produce specific evidence

18  of their contentions in a motion for summary judgment, this argument will not be considered.  The

19  Court does note, however, the many police reports submitted along with Scotch 80's response and

20  the expert opinions submitted by Nevada West and concludes that it is unlikely assault and battery

21  coverage was available on remotely similar terms for Scotch 80's bar.

22         Nevada West has shown that, as a matter of law, it violated no duty owed to Scotch

23  80's.  Scotch 80's never requested assault and battery coverage.  Had Piper or Bunch ever read their

24  policy, as required under Nevada law, they would have known that they did not have assault and

25  battery coverage and could have sought it out if they desired.  Piper and Bunch never requested

26  explanation of their policy or any exclusions and so Nevada West was not required to explain

them.  Scotch 80's does not point to any evidence or law demonstrating that Nevada West breached any duty owed to Scotch 80's.  Nevada West has, therefore, shown that there are no genuine issues of material fact necessitating trial.  The Court, then, grants Nevada West's motion for summary judgment.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Nevada West's Motion for Summary Judgment (#62) is GRANTED.

Because this order disposes of each of Scotch 80's claims, the Clerk of the Court is instructed to close this case.

Dated: October 12, 2010

**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)